UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE BROWN,

    Plaintiff,

                              Case No. 08-11446

v.

JASON INCORPORATED,             Hon. John Corbett O'Meara
d/b/a JANESVILLE ACOUSTICS,

    Defendant.
_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court is Defendant Jason Incorporated d/b/a Janesville Acoustics's motion for summary judgment, filed December 11, 2008. Plaintiff submitted a response brief on January 5, 2009. Defendant filed a reply on February 13, 2009. The court heard oral argument on March 19, 2009, and took the matter under advisement. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND FACTS

This case involves a dispute over sales commissions. Plaintiff Carrie Brown was recruited by Sackner, an automotive supplier, in 2000. At the time, Brown was a successful sales representative for Foamade Industries, where she was earning approximately $200,000 per year in salary and commissions. Sackner's Vice President of Sales and Marketing, Randy Vant Hul, had heard of Brown's reputation and recruited her over a period of several months. Initially, Brown was not interested in leaving Foamade, particularly in light of the fact that Sackner's offer did not give her the opportunity to earn commissions.

On May 8, 2000, Vant Hul made an offer that was accepted by Brown.  The offer provided that Brown would be hired as Sackner's Automotive Sales Manager.  Her "compensation package" was identified as follows:

> ◆ Yr. One: $150,000 Salary
> ◆ Yr. Two: $140,000 Salary, $10,000 Mgt. Bonus*, .50% Insert Commission/ .5% Non-Insert Commission
> ◆ Yr. Three: $120,000 Salary, $10,000 Mgt. Bonus*, .75% Insert Commission/ 1.0% Non-Insert Commission
> ◆ Yr. Four: $100,000 Salary, $10,000 Mgt. Bonus*, 1.0% Insert Commission, 1.5% Non-Insert Commission
> ◆ Yr. Five: Salary TBD, $10,000 Mgt. Bonus*, 1.0% Insert Commission, 1.5% Non-Insert Commission
>
> * bonus based on Detroit Sales Team meeting their business development goal

Pl.'s Ex. B.  The offer letter was silent with regard to the issue of post-termination commissions, although it did provide for a "severance" of six months of "base salary" if Brown was terminated within the first two years.  Brown signed the offer letter on May 10, 2000, and began her employment with Sackner on June 1, 2000.

Brown was successful in procuring significant business for Sackner and for its successor, Defendant Janesville Acoustics.  By 2007, she had procured approximately $18.6 million in sales, and her annual commissions were $200,000.

In 2005, Mark Lunau was hired to replace Vant Hul.  Shortly after he was hired, he had a meeting with Brown.  He asked her what she thought a "fair salary" was, because he wanted to eliminate her commissions and pay her on a straight salary basis.  Brown responded that she did not want to work on a salary basis and that she accepted the position with Sackner only because of the opportunity to earn commission.  At that point, apparently, the issue was "dropped" for a while.

On March 5, 2007, Lunau gave a letter to Brown that stated that her commission awards would be "frozen, pending finalization of a new compensation agreement between Janesville Acoustics and Carrie Brown." Pl.'s Ex. E.  Brown contends that she never agreed to this.

The parties attempted to negotiate a new compensation package for Brown.  The parties discussed the possibility that Brown would work for Janesville as an independent sales representative, rather than as an employee.  Lunau provided a draft plan to Brown on September 13, 2007.  That plan provided that Brown would be paid commission "for as long as the product is in production or 6 years, whichever comes first." Pl.'s Ex. F.  The plan also had a termination clause: "Upon termination . . . Mrs. Brown will be paid commissions on the booked business (contracted and in production only) for a period of five years or when the business ends naturally, which ever comes first . . . ." Id.

The parties continued to negotiate and reduced their agreement to a written "independent sales agent agreement," which Lunau sent to Brown on October 4, 2007.  The proposed agreement continued to have a termination clause that provided Brown with commissions upon termination "for a period of five (5) years or when the business ends naturally . . . ." Pl.'s Ex. G.  The proposed agreement also capped Brown's annual compensation at $250,000.  Brown emailed Lunau on December 11, 2007, requesting that the compensation cap be phased in more gradually.  Brown did not get a response from Lunau.

Instead, on January 4, 2008, Janesville withdrew the proposal for an independent sales representative agreement.  Pl.'s Ex. I.  Janesville presented Brown with a new compensation plan on January 8, 2008.  That plan phased out her commission over two years, eventually providing a salary of $150,000 in 2010.  Pl.'s Ex. J.  Lunau included this new plan in a letter to Brown on

January 23, 2008, notifying her that any "current or expired" commission plans were "terminated" and that her continued employment constituted acceptance of the new plan. Pl.'s Ex. K. The letter also stated that Brown would not be paid any commissions upon termination. Brown refused to sign the letter and, on February 7, 2008, Janesville terminated her employment.

## LAW AND ANALYSIS

Brown filed this suit on April 4, 2008, alleging that she is entitled to post-termination commissions based upon the parties' agreement and the procuring cause doctrine. Brown also alleges that Janesville violated the Michigan Sales Representatives Commission Act by failing to pay post-termination commissions. Janesville has filed a motion for summary judgment.

### I. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### II. Procuring Cause Doctrine

#### A. Plaintiff's At-Will Status

Janesville asserts that the procuring cause doctrine does not provide a basis to award Brown post-termination commissions. Janesville contends that the procuring cause doctrine applies only to independent sales representatives, not at-will employees, who may be "terminated without further consequence." Janesville argues that courts have not addressed this distinction, but have assumed the application of the doctrine to employment relationships. The

distinction here, according to Janesville, is that doctrine rests on the "fair dealing implicit in principal-agent contract." Also according to Janesville, "the principle of fair dealing does not apply to employer-employee relationships."

Janesville does not directly address, however, the policy reasons underlying the procuring cause doctrine, which are equally applicable to independent sales representatives and at-will employees. The procuring cause doctrine was explained in <u>Reed v. Kurdziel</u>, 352 Mich 287, 293-95 (1958):

> It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, <u>regardless of the type of agency or contract</u>, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. In Michigan the rule goes further to provide <u>if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause</u>.

<u>Id.</u> (citations omitted) (emphasis added). The point of the procuring cause doctrine is to prevent a principal from "unfairly taking the benefit" of the agent's services by terminating the arrangement in order to avoid paying commission. The doctrine has been applied to allow post-termination commissions to independent sales representatives, sales agencies, and employees. Defendant has not provided a persuasive reason for this court to hold otherwise. Nor has Defendant pointed to any case in which the court held that an at-will employee may not benefit from the procuring cause doctrine, based upon that employee's at-will status alone.

In an unpublished decision, the Michigan Court of Appeals expressly rejected the argument that the procuring cause doctrine did not apply to an at-will employee: "The case law that has evolved expressly concluded that the characterization of the agency relationship was not dispositive. Moreover, the case law acknowledged that employment relationships may be terminated at will. Simply put, the nature of the relationship does not allow the principal to deprive the agent of what has been earned." Craft Agency, Inc. v. Rickard, 2005 WL 2086132, *2 (Mich. App. Aug. 30, 2005) (citing Reed). This court finds this reasoning to be persuasive and rejects Defendant's argument that Plaintiff is not entitled to post-termination commissions merely because she was an at-will employee.

### B.  Post-Termination Commissions

Defendant also argues that Plaintiff is not entitled to post-termination commissions because the parties did not have an express or implied agreement on the issue. As Plaintiff points out, Defendant's argument "essentially turns the procuring cause doctrine on its head." The procuring cause doctrine only comes into play when the parties' agreement is silent on the issue of post-termination commissions. See APJ Assoc., Inc. v. North American Philips Corp., 317 F.3d 610, 616 (6th Cir. 2003) ("A manufacturer's representative firm may only obtain an award as the procuring cause of post-termination sales where the written agreement is silent."); Leger v. Image Data Serv., 2002 WL 1463555 (Mich. App. July 5, 2002) (noting that the procuring cause doctrine is a "default rule for interpreting a contract that is silent" with respect to post-termination commissions). In this case, the parties' agreement did not expressly address the issue of post-termination commissions. Cf. Clark Bros. Sales Co. v. Dana Corp., 77 F. Supp. 2d 837 (E.D. Mich. 1999) (Rosen, J.) (declining to apply procuring cause doctrine to award post-

termination commissions where the parties' agreement expressly precluded such commissions); Chase v. Matsu Mfg., Inc., 147 Fed. Appx. 507, 2005 WL 1916969 *5 (6th Cir. Aug. 11, 2005) (holding procuring cause doctrine inapplicable where "the agreement before the Court is not silent on the issue of post-termination commissions"). There is no written contract term or any other evidence that the parties intended to foreclose post-termination commissions here.

Defendant also argues that the parties did not expressly agree to "life of the part" commissions. However, Brown testified that she was always paid commissions "on life of the program."[1] See Terry Barr, 96 F.3d at 180 ("Michigan law provides that the parties' practical interpretation of their contract, and their course of conduct under that contract, are entitled to great weight in interpreting ambiguous provisions of the contract."). When proposing terms for an independent sales representative agreement with Brown, Defendant included terms providing for post-termination commissions for five or six years. Plaintiff argues that this suggests that Defendant knew this was always the expectation between the parties. (It could also show that the parties were changing their agreement, but it is up to the jury to make the inference.) Certainly, Defendant has not presented evidence rebutting Brown's contention that she was always paid on a "life of the program" basis.

In the absence of a contractual clause limiting or foreclosing post-termination commissions, the procuring cause doctrine applies. Further, Plaintiff has set forth sufficient evidence that the parties intended "life of the part" post-termination commissions to send that

---

[1] "Life of the part" commissions are commonly paid to manufacturer's representatives in the automobile industry. See Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc., 96 F.3d 174, 176 n.1 (6th Cir. 1996) (noting that sales representatives must invest a great deal of time and effort in securing an initial sale, and the buyer will often continue to use the part in the manufacture of its automobiles for many years).

issue to the jury.  Accordingly, the court will deny Defendant's motion for summary judgment.

## II.     Sales Representative's Commission Act

Defendant also argues that Plaintiff's claim under the Michigan Sales Representative's Commission Act, M.C.L. 600.2961, should be dismissed.  This argument is based on the premise that Defendant does not owe Plaintiff any post-termination commissions.  As discussed above, that is an issue for the jury.  Therefore, the court will deny Defendant's motion as to this issue as well.

## ORDER

IT IS HEREBY ORDERED that Defendant's December 11, 2008 motion for summary judgment is DENIED.


                                        s/John Corbett O'Meara
                                        United States District Judge

Date:  March 24, 2009



I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 24, 2009, by electronic and/or ordinary mail.


                                        s/William Barkholz
                                        Case Manager